# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**RONALD NOAH JACKSON,**

      **Plaintiff,**

v.                                                       Case No:   6:19-cv-529-Orl-EJK

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**
_____/

## ORDER[1]

Plaintiff, Ronald Noah Jackson, brings this action pursuant to Title XVI of the Social Security Act (the "Act"), as amended, 42 U.S.C. §§ 405(g) and 1382, to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Supplemental Security Income ("SSI") under the Act. (Doc. 1.) Upon review of the record, including the transcript of the proceedings before the Administrative Law Judge ("ALJ"), the ALJ's decision, the administrative record, and the pleadings and memorandum submitted by the parties, the Court affirms the Commissioner's final decision in this case, pursuant to sentence four of 42 U.S.C. § 405(g).

### I. BACKGROUND

Plaintiff filed for SSI on June 28, 2016. (Tr. 250–260.) He alleged an onset of disability on March 1, 2016, due to depression. (Tr. 304.) His application was denied initially and on reconsideration. (Tr. 76–83, 86–99.) Plaintiff then attended a hearing held on October 2, 2017

---

[1] On June 14, 2019, both parties consented to the exercise of jurisdiction by a magistrate judge. (Doc. 11.) The case was referred by an Order of Reference on June 17, 2019. (Doc. 13.)

before an Administrative Law Judge ("ALJ"). (TR. 53–75). In a decision dated November 30, 2017, the ALJ found Plaintiff not disabled, as defined under the Act. (Tr. 102–120.)

Plaintiff appealed this decision to the Appeals Council, and on April 9, 2018, the Appeals Council granted Plaintiff's request for review. The Appeals Counsel ultimately remanded the claim because the ALJ failed to account for the restrictions identified by Dr. Dorothy Lekarczyk, a two-time examining psychologist, despite giving the doctor's opinion great weight. (Tr. 122–123.) The Appeals Council noted that Dr. Lekarczyk opined that Plaintiff "had extreme limitations to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual, complete a normal workday or workweek, perform at a consistent pace, and set realistic goals or make plans independently of others[.]" (Tr. 122.) Despite this, the ALJ's residual functional capacity ("RFC") did not include any of those restrictions and did not explain why those limitations were not included. (*Id.*) The Appeals Council ordered that, on remand, the ALJ was to: (1) further consider the non-treating source's opinion, explaining the weight given and requesting additional evidence or further clarification as appropriate; (2) further evaluate Plaintiff's mental impairments in accordance with the special technique, providing specific findings and appropriate rationale for each of the functional areas; and (3) obtain supplemental evidence from a Vocational Expert ("VE") as warranted. (Tr. 122–23.)

On remand, the ALJ held a second hearing on August 20, 2018. (Tr. 31–52.) In a decision dated October 31, 2018, the ALJ once again found Plaintiff not disabled, as defined under the Act. (Tr. 7–29.) On January 16, 2019, the Appeals Council denied Plaintiff's request for a review. (Tr. 1–6.) Plaintiff filed this action for judicial review of the Commissioner's decision on March 18,

2019. (Doc. 1.) Plaintiff has exhausted the available administrative remedies, and the case is properly before this Court.

## II.     THE ALJ'S DECISION

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. § 416.920(a)(4). Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work available in significant numbers in the national economy. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–1240 (11th Cir. 2004). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. *Id.* at 1241 n.10.

Following remand from the Appeals Council, the ALJ performed the sequential analysis through step five. (Tr. 12–22.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 20, 2016,[2] the application date for SSI benefits. (Tr. 12.) At step two, the ALJ determined that Plaintiff had the following severe impairments: depression, bipolar disorder, anxiety, and post-traumatic stress disorder ("PTSD") (collectively, "affective disorders"), lumbar strain, and left knee degenerative joint disease. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

---

[2] The parties assert in the Joint Memorandum that Plaintiff applied for SSI on June 28, 2016. (Doc. 17 at 1.)

- 3 -

Before proceeding to step four, the ALJ concluded that Plaintiff had the RFC to perform:

> medium work as defined in 20 CFR 416.967(c) except occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, and stairs, but never ladders, ropes, or scaffolds. Avoid: work at heights, work with dangerous machinery, foot controls, constant vibrations and overhead reaching bilaterally. Work tasks should be simple 1-3 steps learned in 30 days or less, performed repetitively with occasional interaction coworkers [sic] and supervisors, but none with the general public.

(Tr. 15–16.) [3]

At step four, the ALJ concluded that Plaintiff was not capable of performing his past relevant work as a warehouse worker, short order cook, or baker helper, based on the VE's testimony. (Tr. 20.) At step five, considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform, such as hand packager, linen room attendant, and laundry worker. (Tr. 21–22.) As such, the ALJ found that Plaintiff was not under a disability at any time from June 20, 2016, through the date of the second decision. (Tr. 22.)

### III.   STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would

---

[3] Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." SSR 83-10.

accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotation marks omitted).

When the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]" *Id.* However, though the review is limited, "the entire record must be scrutinized to determine the reasonableness of the Secretary's factual findings." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

## IV. DISCUSSION

Plaintiff raises the following arguments on appeal: (1) the ALJ failed to properly evaluate the opinion evidence in the record from two-time evaluating psychologist, Dr. Lekarczyk, and treating Physician Assistant, Mr. Main; (2) the ALJ applied the improper standard in assessing Plaintiff's RFC; (3) the ALJ failed to articulate adequate reasons for discrediting Plaintiff's testimony; (4) the ALJ failed to properly consider the lay witness function reports; and (5) the ALJ's questioning of the VE was based on an unsustainable RFC finding.

### A. Opinions of Record

#### 1. Dorothy Lekarczyk, Ph.D.—two-time evaluating psychologist

Plaintiff takes issue with the ALJ's overall assessment of Dr. Lekarczyk's opinion and the ALJ's decision to afford it little weight, asserting that decision is not supported by substantial evidence. (Doc. 17 at 10.) The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, the

statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel*, 631 F.3d at 1178–79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). When evaluating a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. *See* 20 C.F.R. § 416.927(c).[4] A treating doctor's opinion is generally entitled to more weight, and an ALJ must articulate good cause for discounting a treating doctor's opinion. *Id.* § 416.927(c)(2). However, the opinion of a one-time examiner is not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

Dr. Lekarczyk is a psychologist who examined Plaintiff on two occasions, one year apart. (Doc. 17 at 10–16; Tr. 19–20.) On August 30, 2017, Dr. Lekarczyk evaluated Plaintiff and opined, in pertinent part, that Plaintiff had moderate limitations in the ability to accept instructions and respond appropriately to criticism from supervisors or to respond appropriately to changes in the work setting; marked limitations in the ability to understand and remember detailed instructions, travel in unfamiliar places, or use public transportation; and extreme limitations in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual, complete a normal workday or workweek, perform at a consistent pace, and set realistic goals or make plans independently. (Tr. 556–557.)

---

[4] Although the Commissioner has adopted new regulations for considering medical opinions for claims filed on or after March 27, 2017 (*see* 20 C.F.R. § 416.920c), the claims here were filed in 2016, so the rules in § 416.927 apply.

On August 1, 2018, Dr. Lekarczyk evaluated Plaintiff again. Changes from the limitations identified in the previous year consisted of an extreme (rather than marked) limitation of the ability to understand and remember detailed instructions, a moderate (rather than no) limitation of the ability to sustain an ordinary routine without special supervision, and a marked (rather than no) limitation of the ability to adhere to basic standards of neatness and cleanliness. (Tr. 670–671.)

The ALJ afforded Dr. Lekarczyk's opinions little weight, finding that they were inconsistent with the record, as well as "conclusory, speculative, and not grounded on treatment or progress notes of the claimant's treating source . . . and the psychological consultative examiner Dr. Gary Honickman, Ph.D., [sic] findings." (Tr. 19–20.) Specifically, the ALJ found as follows:

> The records shows generally normal mental status findings after periods of treatments. (see Exhibits 1F, 4F, 5F, 7F, 8F, 13F) The claimant has required psychiatric treatments, but again responded very well to treatment. His mental status examinations showed some acute periods of poor insight, judgment and impulse control as well as depressed, anxious, and restless mood but were relatively within normal limits with no memory loss, cognitive deficits, or speech impediment, and clam and appropriate affect with good, appropriate, fine and euthymic mood. His motor activity and behavior were described as cooperative and appropriate. Furthermore, Dr. Lekarczyk does not have a treating relationship with the claimant. Dr. Lekarczyk saw the claimant only two times, (once in August of 2017, and again in August of 2018) and her own evaluations fail to indicate the extreme limitations noted in Exhibits 9F, 14F. (See Exhibits 10F, 15F) Dr. Lekarczyk limitations for the claimant in fail to correlate with the treatment records that are set forth above, and which show good response to medications. The medical evidence reflects that claimant's mental health condition improved with consistent mental health treatment and medications.

(Tr. 19–20) (errors in original).

As an initial matter, Plaintiff concedes that Dr. Lekarczyk did not have a treating relationship with Plaintiff. (Doc. 17 at 16.) In that regard, "[t]he administrative law judge need not defer to the opinion of a physician who conducted a single examination because that physician is

not a treating physician." *Huntley v. Soc. Sec. Admin.*, Comm'r, 683 F. App'x 830, 832 (11th Cir. 2017) (unpublished). Plaintiff does not point the Court to any authority that requires the ALJ to give any greater deference to a two-time examiner.

Nevertheless, the ALJ evaluated Dr. Lekarczyk's opinion using the factors set forth in 20 C.F.R. § 416.927(c). As the Appeals Council instructed, the ALJ re-evaluated Dr. Lekarczyk's opinion, explaining the weight given and the reasons therefor. Plaintiff does not actually contest the parts of the record tht showed that Plaintiff's baseline improved with psychiatric treatment. As the ALJ determined, despite Plaintiff's mental limitations (including those assessed by Dr. Lekarczyk), his mental status examinations were still relatively within normal limits. (Tr. 19–20.) "[T]he administrative law judge is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Huntley*, 683 F. App'x at 832. Thus, substantial evidence supports the weight the ALJ gave to Dr. Lekarczyk's opinion, and Plaintiff fails to demonstrate otherwise.

### 2. Robert Main, P.A.—treating Physician Assistant

Plaintiff also asserts that the ALJ improperly afforded no weight to the opinion of Robert Main, a physician assistant who treated Plaintiff. (Doc. 17 at 16.) As contemplated by the Social Security Regulations ("SSR"), physician assistants are medical sources who are not necessarily qualified as "acceptable medical sources." SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). However, "[o]pinions from these medical sources, who are not technically deemed 'acceptable medical sources' under [the] rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* Thus, an ALJ should consider the opinion of a physician assistant on such issues, but is not required to give his or her opinion controlling weight. *Id.*

On April 18, 2018, PA Main authored a letter noting that Plaintiff's diagnoses of bipolar disorder, adjustment disorder with depressed mood, and adult antisocial behaviors could prevent him from performing certain job duties at times. (Tr. 571.)[5] On July 14, 2018, PA Main completed a Functional Capacity Questionnaire ("Questionnaire") for Plaintiff which PA Main did not fill out in its entirety, but noted therein, without further elaboration, that Plaintiff's prognosis was "good," despite Plaintiff's impairments being expected to last twelve months. (Tr. 572.) The Questionnaire also noted that Plaintiff would need to be absent from work more than four days per month. (*Id.*)

The ALJ gave no weight to PA Main's opinion because it was conclusory, speculative, and not grounded on treatment or progress notes. (Tr. 19.) Moreover, the ALJ noted that PA Main was not an acceptable medical source. (*Id.*) Plaintiff argues that the reasons for discounting PA Main's opinion are not sufficiently specific and are inaccurate, as PA Main's opinion is otherwise supported in the record. (Doc. 17 at 17.)

The undersigned determines otherwise. The ALJ was not required to afford any specific weight to PA Main's opinion under SSR 06-03p. Rather, the ALJ was tasked with reviewing the opinion in light of the record evidence, which the ALJ did. While the ALJ's assessment of PA Main's opinion was brief, her assessment of PA Main's opinion did not run afoul of SSR 06-03p. The letters PA Main authored offered no specific insight into why Plaintiff's mental status could prevent him from performing job duties and did not elaborate on what those job duties would be. Further, the Questionnaire provided no information on PA Main's determination that Plaintiff would need to miss more than 4 days of work per month. Again, the ALJ was not required to assign

---

[5] PA Main wrote a nearly identical letter on March 28, 2016. (Tr. 431.)

controlling weight to PA Main's opinion, and even still, the ALJ articulated sufficiently specific reasons, supported by substantial evidence, for affording it no weight.

### B. Plaintiff's RFC

Next, Plaintiff contends that the ALJ applied an improper standard in assessing Plaintiff's RFC. "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). "[T]he claimant's residual functional capacity is considered in determining whether the claimant can work." *Id.* (citing 20 C.F.R. § 1520(f)). The SSR specify that:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may the RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p.[6] The ALJ ultimately decided that Plaintiff was capable of performing a medium level of work with additional limitations. (Tr. 15–16.)

It appears Plaintiff takes issue with the final paragraph of the ALJ's RFC analysis:

> After carefully considering the entire record, the undersigned finds the objective medical evidence and opinions discussed herein fail to support the extent and severity of the limitations as alleged. **The undersigned finds the evidence of record is void of compelling documentation suggesting claimant's condition is so severe as to totally prevent his ability to perform unskilled work activity**.

(Tr. 20) (emphasis added). On this point, Plaintiff contends that "[n]owhere is it required that 'compelling documentation' [is needed] to establish that a claimant's condition 'totally prevent[s]

---

[6] Title 20 C.F.R. §§ 404.1545 and 416.945 refer to the claimant's physical, mental, and other abilities affected by the impairment.

his ability to perform unskilled work activity.'" (Doc. 17 at 23.) It appears Plaintiff argues that the emphasized sentence demonstrates that the ALJ engaged in improper burden shifting to assess Plaintiff's RFC. That is not the case. Rather, a review of the ALJ's opinion shows that the ALJ thoroughly assessed the opinions of record in the manner required by 20 C.F.R. § 416.945 and SSR 96-8p. (Tr. 15–20.) The ALJ, in detail, evaluated Plaintiff's physical abilities, mental abilities, and the limiting effects of these impairments. (*Id.*) Thus, despite the use of inartful language, the ALJ properly assessed Plaintiff's RFC.

### C. Plaintiff's Subjective Complaints

Next, Plaintiff contends that the ALJ failed to discuss adequate reasons for discrediting Plaintiff's testimony. (Doc. 17 at 27.) Specifically, Plaintiff asserts that the ALJ failed to properly consider much of Plaintiff's testimony, and instead selectively chose which portions of Plaintiff's testimony to consider. (*Id.*)

In support of his argument, Plaintiff points to portions of his own testimony at both hearings regarding his daily limitations due to knee pain, and the extent of his depression, which included two suicide attempts, involuntary commitment under Florida's Baker Act, panic attacks, anxiety, and PTSD. (Doc. 17 at 27–28.) He also told the ALJ that he only changes his clothes once every two weeks and continues to have suicidal ideations. (*Id.* at 28.) While recognizing this testimony, the ALJ found that the intensity, persistence, and limiting effects of Plaintiff's conditions were not supported by the objective medical evidence. (Tr. 16–17.)

Plaintiff takes issue with the ALJ's less-than-wholesale acceptance of Plaintiff's testimony. Plaintiff asserts, incorrectly, that the ALJ committed no more than one sentence to the evaluation of Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms. (Doc. 17 at 28.) Where, as here, "the record shows that the claimant has a medically-determinable

impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work." *Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 831 (11th Cir. 2013) (citing 20 C.F.R. § 404.1529(c)(1)) (unpublished). In doing so, the ALJ should "examine the claimant's statements regarding her symptoms in relation to all other evidence, and consider whether there are any inconsistencies or conflicts between those statements and the record." *Id.* at 832 (citing 20 C.F.R. § 404.1529(c)(4)). "If the ALJ decides not to credit the claimant's testimony as to her subjective symptoms, the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious as to the credibility finding." *Id.*

Plaintiff's argument is not well taken because the ALJ articulated sufficient reasons for discounting Plaintiff's testimony. A review of the ALJ's decision demonstrates that the ALJ spent several pages assessing the medical evidence related to Plaintiff's physical and mental functioning in order to demonstrate that it did not support Plaintiff's testimony. (Tr. 15–20.) Thus, the record reveals that the ALJ provided an adequate basis to explain why she partially discredited portions of Plaintiff's subjective complaints where they contradicted other, objective evidence.

For example, despite Plaintiff's complaints of left knee pain, the ALJ cited a number of records demonstrating that Plaintiff did not take medication for knee pain, had a normal knee x-ray result, and had otherwise normal and unremarkable physical findings upon examination, including full range of motion. (Tr. 16–18, citing Tr. 427–442 (1F), 446–453 (3F), 515–522 (7F), 573–669 (13F).) He had not even engaged in conservative treatment for knee pain. (*Id.*) As to Plaintiff's asserted mental limitations, the ALJ acknowledged them but found that record evidence demonstrated that they were not as limiting as Plaintiff stated. (Tr. 18.) Plaintiff's memory remained intact and his intellectual functioning was average. (*Id.*, citing Tr. 443–445 (2F), 454–

467 (4F), 464-484 (5F), 485–514 (6F), 523–555 (8F).) In fact, psychiatric treatment greatly improved his mental health condition. (*Id.*) Plaintiff also testified that he could cook simple meals, use the microwave, take medicine, shop for groceries, pick up medication, and drive a car. (Tr. 18, citing Tr. 33–43.)

Therefore, the undersigned does not agree with Plaintiff's assertion that the ALJ cherry-picked part of the record to consider. Rather, the ALJ supported her decision to discredit portions of Plaintiff's subjective testimony regarding his limitations with substantial evidence. The ALJ found that the objective medical evidence findings did not necessarily support Plaintiff's claims regarding the severity of his symptoms and fully elaborated on why this was so. *See Strickland*, 516 F. App'x at 832 (holding ALJ did not err where ALJ found plaintiff's medical evidence and daily living activities were inconsistent with subjective complaints regarding limiting effects of symptoms); *May v. Comm'r of Soc. Sec.*, 226 F. App'x 955, 958–59 (11th Cir. 2007) (unpublished) (holding that the ALJ did not err where clinical findings did not support plaintiff's claims of the severity of her symptoms); *Reeves v. Astrue*, 238 F. App'x 507, 514 (11th Cir. 2007) (unpublished) (holding that the ALJ did not err where plaintiff's subjective testimony of pain and fatigue were not supported by the record).

### D.  Lay Witness Function Reports

Next, Plaintiff argues that the ALJ failed to properly consider two function reports completed by Plaintiff's mother, Carolyn Kay Delmonico, on July 6, 2016 and February 4, 2017. (Doc. 17 at 36–37.) The Social Security Regulations provide that third-party function reports can provide relevant insight into the severity of a claimant's impairments and how it affects his ability to perform work. 20 C.F.R. § 416.913(a)(4); *see also* SSR 06-03p, 2006 WL 2329939.

Ms. Delmonico's function reports confirmed much of Plaintiff's testimony regarding his limitations with respect to sleeping, grooming, concentration, and mood, among other things. (Tr. 312–319 (July 2016 report) (Ex. 4E); Tr. 359– 366 (Feb. 2017 report) (Ex. 10E). The ALJ gave limited weight to these reports, citing to both of Ms. Delmonico's reports, because:

> These are not medical professionals, and tend to agree with a claimant's allegations due to their relationship. Here, greater limitations were reported than are supported by objective evidence and medical opinions. Such statements are given weight to the extent they are supported by medical findings. Third party statements generally are not persuasive to support limitations that preclude all work activity. They help provide insight to a claimant's lifestyle and activities. In light of medical and opinion evidence, these reports have no support to warrant greater limitations in the RFC.

(Tr. 20.)

Plaintiff asserts that the ALJ's discounting of these reports was far too broad and boilerplate. (Doc. 17 at 38–39.) While an ALJ's failure to address a family member's lay testimony is reversible error, *Jones v. Comm'r of Soc. Sec.*, No. 6:16-cv-1259-Orl-DCI, 2018 WL 501584 (M.D. Fla. Jan. 22, 2018), that was not the case here. Rather, the ALJ did assess Plaintiff's mother's opinions and found that they contained greater limitations than was supported by the other evidence of record, which the ALJ had previously recounted in the decision. (Tr. 20.) However, the ALJ partially accepted the opinions to the extent they were consistent with medical findings. (*Id.*) In sum, the ALJ properly considered, and then properly partially rejected, the testimony in Ms. Delmonico's function reports.

### E. Hypothetical Question

Finally, Plaintiff contends that the Commissioner failed to carry his burden at step five because "the hypothetical questioning was based on an unsustainable RFC finding for each of the reasons discussed above." (Doc. 17 at 42.) Because the Court has rejected each of Plaintiff's

aforementioned arguments, and concluded that the ALJ's RFC determination was supported by substantial evidence, the Court construes Plaintiff to have waived this argument due to his failure to elaborate on it further. *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (unpublished) (stating that plaintiff waived an issue where he did not "elaborate on th[e] claim or provide citation to authority about th[e] claim".)

## V. CONCLUSION

Upon consideration of the foregoing, it is **ORDERED AND ADJUDGED** that:

1. The Commissioner's final decision in this case is **AFFIRMED**; and

2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and **CLOSE** the file.

**DONE** and **ORDERED** in Orlando, Florida on September 30, 2020.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record